UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


THOMAS MICHAEL PALMER,

     Petitioner,

v.                                                                    Case No. 5:19cv2-MCR-HTC

MARK S. INCH,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Thomas Michael Palmer, proceeding *pro se*, filed an amended petition under 28 U.S.C. § 2254, ECF Doc. 5, challenging his conviction in Case No. 2013-CF-2870 in the circuit court of Bay County, Florida. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the amended petition, the State's response (ECF Doc. 17), and Petitioner's reply (ECF Doc. 23), the undersigned recommends the amended petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    The Offense, Trial and Conviction

In September 2013, Petitioner was arrested after law enforcement discovered a methamphetamine ("meth") lab in an apartment Petitioner shared with his then-

girlfriend, Tina Chambers ("Chambers").  ECF Doc. 17-1 at 17-19.  Judge Elijah Smiley was the initial judge assigned to the case.  *Id.* at 15.  In March 2014, the state charged Petitioner with trafficking in methamphetamine ("meth") (28 grams or more but less than 200 grams) and manufacturing meth.  *Id.* at 36 (Information).

The initial counsel appointed from the Office of the Public Defender to represent Petitioner at his initial appearance subsequently filed a notice of conflict of interest, *id.* at 41, and the circuit court appointed new counsel, Robert Thirston, to represent Petitioner on March 21, 2014.  *Id.* at 45.  The matter proceeded to trial on April 7, 2014.

On the first day of trial, counsel moved *in limine* to exclude evidence of Petitioner's prior convictions or alleged violations of law.  ECF Doc. 17-1 at 67. Counsel included a proposed order with the motion for Judge Smiley's signature. *Id.* at 69.  The trial, however, was not conducted by Judge Smiley.  Instead, Judge D. Miller presided over the trial.  *Id.* at 74.

Prior to starting the trial, however, Judge Miller engaged in a colloquy with Petitioner to ensure (1) he wanted to proceed with the trial despite the fact that his counsel had only been appointed three weeks earlier and indicated he was not prepared to proceed; (2) he understood he was facing life in prison if convicted; and (3) he was knowingly and voluntarily rejecting a plea offer of twelve years.  ECF Doc. 17-2 at 44-48.  Petitioner stated he "want[s] to go to trial" and that he was "not going to consider" the plea.  *Id.*  The evidenced introduced at trial showed as follows:

On September 10, 2013, officers responded to a battery call made by Petitioner at the apartment.   When Deputy Wattenbarger arrived at the scene, Petitioner, Chambers, and the alleged assailant, Stacy Custer, were outside.   ECF Doc. 17-2 at 128.   Petitioner told Deputy Wattenbarger he was assaulted in the apartment, which he described as his home.   *Id.* at 123.   Deputy Wattenbarger arrested Custer for the battery and proceeded inside the residence to speak with Petitioner and any witnesses.   *Id.* at 124.   Upon entering the apartment, Deputy Wattenbarger immediately noticed a "hazy atmosphere" and "smelled chemicals, mostly like and normally associated with the cook of methamphetamine." *Id.* at 124-25.   Deputy Wattenbarger asked Chambers for consent to search the apartment and she agreed.   *Id.* at 125.

Deputy Wattenbarger described the apartment as "no larger" than the area from the witness stand to the jury box.   ECF Doc. 17-2 at 126.   He testified he saw "what appeared to be part of a methamphetamine lab … a gas generator … sitting next to," a cabinet.   *Id.*   The cabinet door was closed.   *Id.* at 172.   The "gas generator" was a 2-liter Coke bottle.   *Id.* at 128.   Deputy Wattenbarger did not search any part of the residence other than the cabinet.   *Id.* at 129.

Deputy Wattenbarger then called Cpl. Schell, a member of the Methamphetamine Task Force with expertise in meth investigations and meth labs to come to the apartment.   ECF Doc. 17-2 at 142-44.   Cpl. Schell testified the haze in the room was still present when he arrived and that he, too, could smell the

distinctive, pungent odor of a meth lab. *Id.* at 147. He observed the two-liter Coke bottle and its contents and knew it was a gas generator in a homemade meth lab. Cpl. Schell took photographs of the room, which showed several other items and materials used to make meth which were in plain view in the small room. *Id.* at 150-70.

Chambers also testified at trial. She testified Petitioner lived with her in the apartment and he was the only other person who had access to the apartment. *Id.* at 132. She described the apartment as consisting of one room with various areas "corded off" with a "drop cloth". *Id.* at 133. She further testified Petitioner was cooking meth on September 10, 2013. ECF Doc. 17-2 at 133. She explained she was a meth addict and got her meth from Petitioner. *Id.* at 135. She described what materials were required to make meth but had "no idea" how to put all the ingredients together. *Id.* at 134-35. Instead, Petitioner was the only person at the home who knew how to make meth. *Id.*

Michelle DePaola, an FDLE chemist, also testified at the trial. She testified she received two samples to analyze from the apartment. *Id.* at 176. She tested them using gas chromatography and mass spectrometry and identified both as containing meth. ECF Doc. 17-2 at 177.

Petitioner's counsel moved for a judgment of acquittal at the close of the State's case but did not offer any argument before the judge denied the motion. *Id.* at 180. The jury found Petitioner guilty on both counts, ECF Doc. 7-1 at 100.

Petitioner was found to be a habitual felony offender, *id.* at 147, and on May 19, 2014, the court sentenced Petitioner to forty (40) years on the trafficking count and thirty (30) years on the manufacture count, to run concurrently. *Id.* at 140.

### B.    Postconviction Procedural History and Timeliness

Petitioner appealed his judgment and sentence to the First District Court of Appeal ("First DCA"), on the sole ground of double jeopardy.  The First DCA affirmed in a written opinion issued on December 4, 2015. *Palmer v. State*, 180 So. 3d 1096 (Fla. 1st DCA 2015).  On June 9, 2016,[1] Petitioner filed a *pro se* motion under Florida Rule of Criminal Procedure 3.850.  ECF Doc. 17-3 at 102-14.  That motion, after two amendments, was continuously pending until the First DCA issued its mandate affirming the circuit court's denial of the motion on September 18, 2018. ECF Doc. 17-5 at 16.  The operative motion was the second amended motion, ECF Doc. 17-3 at 177-201, which Petitioner filed on August 31, 2016.[2]

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a § 2254 petition must be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such

---

[1] Although Respondent identifies the motion as having been filed on June 13, 2016, the motion contains a stamp showing that it was delivered to prison mail officials on June 9, 2016.  *See* ECF Doc. 17-3 at 114; *see also,* Habeas Rule 3(d) and *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

[2] Respondent also identifies the date of this filing incorrectly by referencing the docket date.

review."  28 U.S.C. § 2244(d)(1)(A).[3]  For purposes of the AEDPA, Petitioner's conviction became final on January 4, 2016[4], the expiration of the 30-day deadline for Petitioner to seek discretionary review with the Florida Supreme Court of the First DCA's written affirmance of the state court judgment and sentence.  *Dailey v. Crews*, No. 3:13CV148-WS/EMT, 2014 WL 2158428, at *4 (N.D. Fla. May 23, 2014) (citing *Coulliette v. Sec'y, Dep't of Corr.,* No. 5:12cv355/MW/GRJ, 2014 WL 518936, at *2 (N.D.Fla. Feb.10, 2014) (unpublished) ("Because the First DCA issued a written opinion, Petitioner could have sought discretionary review in the Florida Supreme Court, but he did not do so. Accordingly, Petitioner's conviction became final on April 2, 2007, 30 days after the First DCA denied his motion for rehearing, when the time to seek discretionary review expired.")).

The AEDPA clock ran on January 5, 2016, until June 9, 2016, for 156 days. The 3.850 motion tolled the AEDPA clock until September 18, 2018.  *See 28* U.S.C. § 2244(d)(2).  Because only an additional 90 days ran from September 19, 2018, until the instant petition was filed on December 18, 2018, the federal petition is timely.

---

[3] Although there are other "trigger" dates under the AEDPA, none of those apply here.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D)

[4] Thirty days after December 4, 2015 is Sunday, January 3, 2016, so the finality date is Monday, January 4, 2016.  *See King v. Warden*, 665 F. App'x 785, 786 (11th Cir. 2016) ("Because the last day for filing a petition for certiorari with the U.S. Supreme Court fell on a Sunday, the one-year statute of limitations began to run on Monday, May 1, 2006.").

## II.    LEGAL STANDARDS

### A.    Standard of Review Under the AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28

U.S.C. § 2254.  Under that act, relief may only be granted on a claim adjudicated on

the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White*

*v. Woodall*, 134 S. Ct. 1697, 1702 (2014).  A state court's violation of state law is

not enough to show that a petitioner is in custody in violation of the "Constitution or

laws or treaties of the United States."  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562

U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set

forth in the decisions of the United States Supreme Court when the state court issued

its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006)

(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Habeas relief is appropriate

only if the state court decision was "contrary to, or an unreasonable application of,"

that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the

governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Also, because the First DCA affirmed the circuit court's denial of the second amended 3.850 motion without written opinion, *Palmer v. State*, 251 So. 3d 839 (Fla. Dist. Ct. App. 2018), this Court will "look through" the unexplained decision of the First DCA to the circuit court's explanation -- the last related state-court decision that does provide a relevant rationale. The Court should then presume that

the unexplained decision adopted the same reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

### B. Ineffective Assistant of Trial Counsel ("IATC") Claims

All four of Petitioner's grounds are premised on ineffective assistance of trial counsel. An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.  DISCUSSION

As discussed below, given the deferential standards to be accorded to the state court and the heavy burden for habeas relief, the undersigned finds none of Petitioner's IATC claims warrant relief.  The claims are either without merit or are procedurally defaulted.

### A.  Ground One: IATC - Failing to Object to Denial of Motion *in Limine* That Had Previously Been Granted and in Allowing Judge to Pose Questions to Prospective Jurors that Poisoned the Jury Pool

Construed liberally, the amended petition appears to raise two IATC claims in Ground One: (1) counsel failed to object when Judge Miller, who replaced Judge Smiley for trial, denied a motion *in limine* that Judge Smiley had previously granted, which would have barred the mention of Petitioner's prior crimes and (2) counsel failed to object when Judge Miller posed questions to the jurors that resulted in prejudicial answers from two potential jurors, which poisoned the jury pool.  As set

forth below, the undersigned finds the first claim to be unsupported by the record and the second claim to be procedurally defaulted.

    1.   <u>Denial of the Motion *in Limine*</u>

At the start of jury selection, Judge Miller announced he would be trying the case instead of Judge Smiley. ECF Doc. 17-2 at 44. Petitioner contends that, before the potential jurors were brought in, defense counsel "made an oral pronouncement for a ruling on the motion *in limine* he had filed the morning of trial" and also claims Judge Miller denied the motion even though Judge Smiley had previously granted it. ECF Doc. 5 at 7. Petitioner alleges this oral ruling was omitted from the transcript. *Id.* He further claims this ruling "deprived the Defendant his fair and impartial jury and trial as well as a full, fair and impartial Appellate Review." ECF Doc. 5 at 6.

Petitioner raised this issue in his second amended 3.850 motion. ECF Doc. 17-3 at 185, and the circuit court denied the claim in a written order because Defendant's argument was refuted by the record. ECF Doc. 17-4 at 107. The undersigned agrees. As stated above, defense counsel filed only one motion *in limine* on April 7, 2014, the morning of jury selection, which sought to exclude reference to Petitioner's prior crimes. The record shows Judge Miller granted the motion. ECF Doc. 17-1 at 70.

Although counsel submitted a proposed order for Judge Smiley's signature when he filed the motion, a comparison of the signature on that order and the

signature on other documents signed by Judge Miller shows Judge Miller signed the order granting the motion *in limine*. *Compare, e.g.,* ECF Doc. 17-1 at 70 (motion *in limine* signature) *with id.* at 141 (signature on judgment). Also, the jury selection transcript contains no discussion or denial of the motion *in limine*. And, contrary to Petitioner's arguments the ruling was omitted from the trial transcript, a review of the transcript shows it begins at the start of the hearing and contains no obvious gaps of time. Therefore, as the state court correctly found, Petitioner's argument is belied by the record.

Moreover, a review of the jury selection and jury trial transcript shows that no mention was made of Petitioner's prior offenses, which were the subject of the motion *in limine*. Thus, to the extent Petitioner contends statements made by two prospective jurors in response to questions posed by Judge Miller violated the order granting the motion, as Respondent points out, he is incorrect. As discussed below, the questions posed by Judge Miller to the potential jurors was simply whether the jurors "have any preconceived notice that since [Defendant is] charged, he's guilty, that's it, I don't need to hear anything because I don't like meth." ECF Doc. 17-2 at 53. Nothing in that question or the potential jurors' answers, which affirmed that they would tend to believe the person is guilty, violated the order granting the motion *in limine* because neither the answer nor the question referenced any of Defendant's

prior crimes.[5]  Therefore, even if the motion had been denied (which it was not) Petitioner suffered no prejudice.

> 2.  Comments by the two prospective jurors

As stated above, as part of Ground One, Petitioner takes issue with questions asked by the court of potential jurors and the responses given by two jurors, which Petitioner says planted "the seed of guilt" to the jury pool.  ECF Doc. 23 at 6. Although Petitioner phrased this claim in the amended petition as one of IATC, in Petitioner's reply he appears to change this claim to one of trial court error, taking issue with the court's questioning of the jurors, which he contends resulted in a "fundamental carriage of justice."  *Id*.  Regardless, the claim has not been exhausted and, thus, is procedurally defaulted.

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state

---

[5] Juror Rose responded "Yes, sir.  I mean, speaking honestly, I mean, the sheriff's department must have had a reason to arrest you so…" ECF Doc. 17-2 at 53.  Juror Dixon responded, "He summed it up, just the fact there was meth involved, and the fat he was arrested, I would say guilty. *Id.* at 54.

court, thereby alerting that court to the federal nature of the claim. *Duncan*, *supra*, at 365-366; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Petitioner made no mention whatsoever of the comments by the two potential jurors – either in Ground One or anywhere in his second amended 3.850 motion. ECF Doc. 17-3 at 185.  An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 839-40, 48 (1999); *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999).

The only exception to this general rule is if a petitioner can show cause and prejudice or that review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986).  To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension.  *United States v. Frady*, 456 U.S. 152 (1982).  Likewise, a fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

Petitioner has not shown either cause and prejudice or that fundamental miscarriage of justice will occur if the Court does not review this claim. Aside from bald allegations of prejudice and "actual innocence," in his Reply, Petitioner fails to provide any facts showing either. "[G]eneralized allegations are insufficient in habeas cases. Rule 2(c) of the Rules Governing Section 2254 Cases requires petitioners to 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1265 n.62 (11th Cir. 2014). Therefore, Petitioner has failed to exhaust his state remedies for this claim and is also not entitled to federal habeas review of this part of Ground One.

**B.    Ground Two: IATC for Failing to Object to Admission of Two-Liter Coke Bottle and Failing to Impeach Deputy Wattenbarger's Trial Testimony with His Prior Inconsistent Statements in His Police Report**

Petitioner alleges Deputy Wattenbarger's trial testimony regarding the location of the two-liter Coke bottle or "gas generator" as being in plain view was inconsistent with his initial police report where he indicated he found the bottle inside a closed wooden cabinet. ECF Doc. 5 at 13-15. Petitioner alleges counsel's failure to object to the admission of the Coke bottle, and his failure to impeach Deputy Wattenbarger with his written report, resulted in the State being able to assert that Petitioner had knowledge of the paraphernalia and contraband because it was in plain view, which is an essential element of the crimes charged.

The state circuit court denied relief on this ground in the second amended 3.850 motion, finding that "[t]he police report does not specify where Deputy Wattenbarger found the various items." ECF Doc. 17-4 at 108. As the Petitioner argued in his motion for rehearing, *id.* at 184-91, in its determination the circuit court erroneously cites Cpl. Schell's "Affidavit – Complaint", ECF Doc. 17-1 at 18, rather than the "Offense / Incident Report" written by Deputy Wattenbarger, ECF Doc. 5-2 at 50, in support of the court's finding. Petitioner is correct Deputy Wattenbarger stated he found the meth lab materials, including the Coke bottle "inside of a wooden cabinet" in the Incident Report. ECF Doc. 5-2 at 50. Cpl. Schell's Affidavit references these items being found by Deputy Wattenbarger but does not state where the Deputy located these items. ECF Doc. 17-1 at 18.

Petitioner is also correct that, contrary to the Incident Report, Deputy Wattenbarger testified at trial he found the meth lab materials on top of the wooden cabinet in plain view. ECF Doc. 17-2 at 126-27. In fact, the prosecutor had him repeat twice that the Coke bottle was found "where everybody could see it." *Id.* Counsel, therefore, could have attempted to impeach Deputy Wattenbarger with his prior inconsistent statement under Fla. Stat. § 90.608 (allowing impeachment of witness with prior inconsistent statement).

However, as the Respondent argues, and the state circuit court apparently concluded in denying the Petitioner's motion for rehearing, ECF Doc. 17-5 at 6, even

if counsel was deficient for failing to impeach Deputy Wattenbarger, such failure did not prejudice Petitioner for the following reasons.

First, through his cross-examination of Deputy Wattenbarger, defense counsel got the deputy to admit the cabinet was closed when he arrived, Doc. 17-2 at 129, and through his cross-examination of Cpl. Schell, he got the corporal to admit the cabinet was open, *id.* at 170. This discrepancy as to the condition of the cabinet laid the framework for defense counsel to argue, as he did in closing, that there was police misconduct with regard to the location of the gas generator. Also, defense counsel got Cpl. Schell to agree "it would be logical that the gas generator would be somewhat close to the meth," ECF Doc. 17-2 at 171, once again suggesting the Coke bottle was inside the cabinet with the other equipment, rather than on top of the cabinet.

Thus, as the state court concluded, defense counsel presented the defense theory of police misconduct to the jury even without a direct impeachment of Deputy Wattenbarger. Specifically, defense counsel argued to the jury "it was interesting that they found the gas generator outside of the cabinet and they found everything else underneath the cabinet. And Deputy Wattenbarger, his testimony was that the cabinet door was closed but you didn't see any pictures of the cabinet door closed, did you? That cabinet door was open and then all of a sudden the gas generator is on top, not near where they are cooking the productive [sic] if the gas generator is

up here and the product is underneath the cabinet.  How is that possible?  What is the gas generator doing?"  *See* Tr. of Jury Trial at 92; ECF Doc. 17-4 at 108.

Second, Petitioner's knowledge of the meth lab was not based solely or even primarily on the location of the meth lab.  Instead, there was a host of other evidence presented to show Petitioner lived at the apartment, had control of the apartment, and had to have known about the meth lab, given the size of the apartment, the smells emanating from the apartment, and the location of other meth lab materials in plain view.  *See* ECF Doc. 17 at 124 (Deputy Wattenbarger stated, "Upon entering Mr. Palmer's residence there was, it was hazy atmosphere and it smelled of chemicals, most likely and normally associated with the cook of methamphetamine") and ECF Doc. 17-2 at 146-47 (Corporal Schell testified he observed a "haze in the room" that had not dissipated before he arrived, and a "very strong pungent odor" he recognized as caused by a meth lab).

Thus, the testimony of the deputy as to the location of the lab materials was not the only evidence supporting Petitioner's guilt.  As the prosecutor argued in closing, the apartment was so small, it would be impossible for anyone to be in that room and not know of the presence of meth and the bubbling cooking of meth that night.  ECF Doc. 17-2 at 195.

There was also evidence, through Chambers, that the meth lab belonged to Petitioner; that he lived at the apartment; received mail at the apartment; and only

she and Petitioner had keys to the apartment.  Petitioner thus cannot meet the prejudice prong of *Strickland* and is not entitled to habeas relief on this claim.

### C.    Ground Three: IATC for Failing to Object to Cpl. Schell's Testimony

Petitioner argues counsel should have objected to Cpl. Schell's testimony for two reasons: (1) Cpl. Schell testified the items and chemicals depicted in photographs were used in making methamphetamine "without an FDLE laboratory chemical analyst report verifying that the depicting photographic images were in fact listed chemical ingredients that are used to manufacture controlled substances"; and (2) the photographs of the lab materials which purported to show they were in plain view were misleading because other officers, particularly Deputy Wattenbarger, had "plac[ed] the two liter coke bottle alleged (gas generator) and all other alleged drug manufacturing items in plain view" prior to Cpl. Schell arriving.  The undersigned finds that the first claim is without merit because the state court's ruling was reasonable, and the second claim has not been exhausted.

### 1.    Testimony about the materials being used to make methamphetamine

Petitioner raised this issue in his second amended 3.850 motion, ECF Doc. 17 at 33, and the circuit court denied relief on the ground that any objection to the testimony and photographs would have been overruled because the State provided evidence from two sources that the materials were used to make meth.  Namely, Chambers testified the materials were used for making meth, ECF Doc. 17-4 at 109,

and Cpl. Schell also testified the ingredients are used for the manufacture of methamphetamine, *id.*  Also, FDLE chemist DePaola testified she tested two samples taken from the meth lab in the apartment and identified them as methamphetamine.  ECF Doc. 17-2 at 177.

This testimony suffices to establish that the materials were used for making meth.  For these reasons, the state court's conclusion that any objection on these grounds would have been rejected was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d); *See Denson v. United States,* 804 F.3d 1339, 1342 (11th Cir. 2015) (counsel is not ineffective for failing to make a meritless argument).

### 2.    Admission of photographs and Schell's testimony about them

Petitioner argues counsel should have objected to the admission of the photographs taken by Cpl. Schell and his testimony about the photographs because they were misleading about the location of the meth lab items.  However, Petitioner did not raise this issue in the second amended 3.850 motion.  *See* ECF Doc. 17-3 at 190-92.

As stated above in Subsection A.2, *supra*, before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies by "fairly present[ing]" his claim in each appropriate state court.  *See Duncan*, 513 U.S. at 365-366; *O'Sullivan*, 526 U.S. at 845.  Thus, for the same reasons set forth in Subsection

A.2., this claim is procedurally defaulted, and Petitioner is not entitled to relief on this claim.

**D.    Ground Four: IATC for Failing to Argue in Motion for Judgment of Acquittal That Petitioner Lacked Knowledge and Dominion Over Drug-Making Materials Because They Were in a Closed Wooden Cabinet and He Was Not in Exclusive Control of the Premises**

Petitioner alleges trial counsel was ineffective by making a boilerplate motion for judgment of acquittal thereby foreclosing appellate review on the issue of whether Petitioner had (1) knowledge of the concealed drug's presence or (2) the ability to exercise dominion and control over the drug found inside the closed cabinet.

Petitioner exhausted this claim by raising it in his Second Amended 3.850 motion, ECF Doc. 17 at 33, and the circuit court denied relief because any motion for judgment of acquittal would have been denied given the evidence presented. ECF Doc. 17-4 at 110.  The state court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

Under Florida law, if "contraband is found in a location that was accessible to more than one person, a defendant's knowledge of its presence and ability to exercise dominion and control will not be inferred; these elements must be established by independent proof."  *Santiago v. State*, 991 So. 2d 439, 442 (Fla. 2d DCA 2008) (quoting *Wagner v. State*, 950 So. 2d 511, 513 (Fla. 2d DCA 2007)).  In the situation

of a jointly occupied premises, the State can establish knowledge by proof that contraband in common areas was in plain view. *Sims v. State*, 285 So. 3d 1025, 1029 (Fla. 1st DCA 2019); *see also Brown v. State*, 8 So. 3d 464, 466 (Fla. 2d DCA 2009).

But even where the items are not in plain view, knowledge and dominion and control can be established by independent proof such as "the admission into evidence of a pretrial statement made by an accused, by witness testimony, or by scientific evidence." *Thomas v. State*, 269 So. 3d 681, 683 (Fla. 2d DCA 2019). As the state court noted, the deputy and corporal both testified the items were in plain view, and, even if they had not, the girlfriend testified Petitioner lived in the apartment, no one else had access to the apartment, Petitioner had control of the meth lab materials, Petitioner was the only one who lived at the apartment that knew how to make meth, and had made meth that evening.

This evidence was sufficient to deny a judgment of acquittal. When ruling on a motion for judgment of acquittal, the trial court must "view[] the evidence in the light most favorable to the State, … [and] must determine 'whether a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.'" *Melton v. State*, 2021 WL 1931918, at *3 (Fla. 2d DCA May 14, 2021) (quoting *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020)). Here, the testimony of the deputies, the testimony of the girlfriend, and the Petitioner's own statements to police provide evidence sufficient to allow a jury to reasonably find

guilt.  Any more extensively argued motion for judgment of acquittal would have been denied.

An attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted).  Therefore, Petitioner is not entitled to habeas relief on this claim.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.  In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Additionally, this Court must take into account the deferential standards prescribed by § 2254.  *See id.*  Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing.  *See Schriro*, 550 U.S. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.      That the amended petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Palmer*, 2013-CF-2870, in the Fourteenth Judicial Circuit, in and for Bay County, Florida, ECF Doc. 5, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of July, 2021.

_/s/ Hope Thai Cannon_____

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.